Thank you, Your Honors. May it please the Court. It is a privilege to be here on behalf of my client, Fred Eghobor. As the Court knows, there are five different points of error. However, given my time, I'm going to focus on the first two points of error. The first point of error relates to the Allen Charge. As the Court is well aware, an Allen Charge is often thought of and considered by other courts to be a quote-unquote dynamite charge for the intense impact it can have on a jury's deliberations given the specific time it is given. Specifically, the Fifth Circuit has previously held that a charge such as this Allen Charge is not permissible only if the instruction is not coercive and the content is not prejudicial. Specifically, there is a pattern charge that the Fifth Circuit has mandated be used that was deviated from in this case. There are two distinct points on this issue. The first is that an Allen Charge frankly shouldn't have been given in this case given the fact that the jury had not once but twice issued a note to the Court indicating that it could not reach unanimous verdict. And the second issue is that the Allen Charge was improperly modified from the Fifth Circuit pattern. With regards to the first issue, I believe the timing specifically of the events in this case is important. As noted in the brief, the jury was charged on a Tuesday at about 2.25 p.m. and they were sent back to deliberate. They then deliberated the rest of that day, all morning the following morning, and in past lunch until about 3.15 when they sent out a note asking a frankly very detailed question about Government's Exhibit 56, which is a 590-page exhibit full of medical records. And in order to notice that the medical records in that exhibit were actually from two different individuals, one Mary I. Smith, one Mary A. Smith, they would have had to review the documents up through past page 500 and notice different dates of birth and the different initials. My point only being that this is a jury that was clearly very much focused on the evidence, very willing to go through things, conscientiously doing their job. After that, they issued a note saying that there was no unanimous opinion they could give to Egebor. Excuse me, as to Egebor on those counts. They asked if they should continue deliberating against Dr. Joseph Negwa. The court issued an instruction simply saying, yes, continue your deliberations. After that, they issued a second note saying they were unable to reach a unanimous verdict on certain counts. What should they do? And at that point, a now in charge was given. The defendant objected as to both responses and indicated that the now in charge was, they objected to giving it at all, but specifically because of the timing of the charge, the fact that there were two notes, not one, and the undue pressure that it would put in addition to the prejudicial language. That, frankly, unique timing in terms of circuit precedent, I couldn't find a case that was directly. Counselor, are you saying that the upshot of the first note to the judge was that we were unable to reach a verdict? The upshot of the first note was that they could not reach a unanimous verdict on accounts as to Egebor and they wondered if they should continue against the co-defendant, Dr. Joseph Negwa. The response was simply, yes, continue your deliberations. Considering that they used the word unanimous and that they were not able to reach a unanimous verdict, I am indeed, Your Honor, contending that they were not able to at that time. After that, the second note was issued. Then the now in charge was given. And with regard to the specific note itself, I actually compliment the government in their reply brief they enter into on page 22. They give a comparison side-by-side of the different Allen charge, the pattern Allen charge from the Fifth Circuit, and the Allen charge that was actually given in this case. And it notes specifically the different language, specifically a sentence is added which says, Counsel, are you suggesting that the judge should have given the Allen charge after the first note? No, Your Honor. I'm suggesting that the Allen, first of all, I'm suggesting that the district judge should not have given the Allen charge at all. Should have declared a mistrial? Yes, Your Honor. Upon receipt of the first note? Yes, Your Honor. Where there was just a question, should we continue our deliberations? The question was, the judge indicated, excuse me, the jury indicated that there was no unanimous verdict as to counts against Mr. Egebor. Therefore, as Mr. Egebor's attorney, I requested a mistrial at that point based on that portion of the note. The rest of the note said, should we continue our deliberations as to the co-defendant? And frankly, it was not my concern as I was not representing the co-defendant. I certainly would understand if the court would have wanted the jury to continue against the co-defendant. But I did request a mistrial at that point. With regards to the language specifically that was given eventually after the second note from the jury, the language, on the other hand, if the evidence establishes guilt beyond a reasonable doubt on a count as to a defendant, the verdict should be guilty on that count. Now, noticeably, this is a deviation in which the court is adding one sentence which points out to a jury under certain circumstances where they must, by law, find the defendant guilty. If we are to presume that the Fifth Circuit pattern charge is, in fact, balanced, which I think is a fair assumption, the judge improperly unbalanced the charge by adding language that indicated one potential result without correspondingly balancing the other result. As Your Honors know, from earlier in that same charge that was given, there is corresponding sentences where both are stated. What the district judge may have been trying to do is that the addition earlier in that paragraph, I mean, his modifications on this seem primarily to be dealing with the fact there are multiple counts on multiple defendants, and the Allen charge and the pattern jury instruction doesn't countenance that. And so he added in the previous sentence, fails to establish guilt beyond a reasonable doubt as to a count, my emphasized phrase being the addition. And then he was saying, on the other hand, as to other counts, a verdict should be guilty on that. So, I mean, I think he was looking at balance. One way to interpret this, and one way I hope that he was expecting the jury would interpret it, is this, once he starts to talk about individual counts, there needs to be some parallelism if they can agree as to a certain count. So I see it as remaining in balance. I can understand your contrary viewpoint. But isn't that the thrust of that additional sentence? Your Honor, I certainly agree with you as to the point of adding a specific language as to a count or for a particular defendant, which is added several different times. But I think that that actually serves a different purpose than adding the long sentence that I am actually taking issue with. I think that making a clear delineation for the jury that there are certain counts as to each defendant and they must consider the evidence on each count as to each defendant, a perfectly valid point. And I believe that some of the changes that the district judge made were for that purpose. However, I think that when the government's attorney at trial specifically requested this additional sentence, that additional sentence did not, in fact, serve to balance. It served to suggest. And I understand that the language used is not necessarily as prejudicial as, say, go find this guy guilty. I understand that. It is short of that. Yes. Yes, Your Honor, it is certainly short of that. But I do believe that the effect of the additional language is such that it unbalanced a charge that was already carefully balanced, which is why it is the pattern instruction in the first place. If I may move on to my second point, Your Honors. The second point relates to the providing of jury testimony or the jury with testimony from Trudy Bell in the form of a transcript. Now, this is, frankly, a unique fact pattern from what I could see in that both parties agreed to provide the jury with a transcript of a prior witness before the jury requested this. So in terms of the timeline I explained earlier, after the Allen charge is given, the jury comes back having already seen the copy of one witness transcript, that of Ferguson Aquila, and stating specifically we would now like to see the transcript. And you were there at the trial? I was at the trial, yes, Your Honor. And you had no objection to giving the jury that first transcript? I did not, Your Honor, and if I may explain why. As I stated in the brief, there were a couple of reasons. First, he was the primary witness. He testified the longest. He was a cooperating co-defendant, the only cooperating co-defendant, and the only person who could testify as to working with the defendant in that case. Additionally, it was also because he was a native of Nigeria. He spoke with a heavy accent, and as I noted in my motion for new trial at the district level, it seemed very reasonable to me for a jury to want to actually be able to go back and make sure they understood everything he said under those circumstances. So Your Honor is correct. There was no objection from the defendant to that testimony going back. However, as to the second testimony when that happened, that was for Trudy Bell. Trudy Bell was an investigator who was employed by Health Integrity who worked on contract for the government. She was a native of the United States. She spoke with no accent. Her testimony was substantially shorter. And at that point, I raised the issue of, I think, frankly, this is a cumulative matter, and I understand that there's a standard of review issue that opposing counsel and I have a disagreement with. But the second reason why it was improper was that there was no limiting instruction given. And I understand that the government in their brief has issued a, excuse me, has argued that the standard of review should be different on that matter. But I would actually argue that previously in that case, there was a limiting instruction given by the district court. There was a conversation about that earlier when we were conducting the jury charge at that time. It's in the record on appeal, page 960 to 961. And in it, the district judge specifically notes that a limiting instruction is appropriate for a certain portion of the jury. You request a limiting instruction when the first transcript was provided? I beg your pardon. Oh, in the first transcript. No, Your Honor. For Mr. Aquiles, there was no request for a limiting instruction for that. And I believe that the record is actually silent in terms of the proceedings that happened. I believe it's simply the note that the judge sent back saying attaches a copy of the transcript. But no, Your Honor, a limiting instruction was not requested for Ferguson Aquiles. How is the need for it any different with regard to the first transcript than the second? Your Honor, I think it's a matter, it relates back to the other argument, which is it's cumulative. In the sense of if a jury wants to simply check to make sure they heard one or two things right in terms of seeing a— But any time you give a jury a transcript, it's cumulative of the oral testimony, which you assume they listened to already, isn't it? It is, Your Honor, but I'm actually arguing cumulative in terms of transcript upon transcript upon transcript. I think the— They just can't handle too much witness testimony by way of transcript. Is that it? I think, Your Honor, handling too much is not the way I'd phrase it. The way I would phrase it is that they become reliant on it. And the issue is that when you have something sitting in front of you that makes it so easy to see what happened, you're no longer thinking consciously about what you actually observed, facial reactions, nervous tics, all the things why it's important for a jury to actually view live testimony. You're instead just relying on the record. And at that point, the testimony of Ferguson Aquiles, I believe, was well over 100 pages. So when you also have on top of that the additional pages of Trudy Bell's testimony, my point to the judge was we're simply at this point trying it based on what was printed on the paper as opposed to what they actually observed. And I think at that point the judge should have refused it. Now, I will grant certainly that this does appear to be, as I said, a case where I couldn't find anything from the Fifth Circuit previously, where both sides agreed to one transcript and then a second transcript came in after the fact. But what I would argue is the unique nature of this is such that obviously someone who has issues in terms of not speaking clear English because he learned it as a second language, that is different than someone who spoke very briefly in terms of comparison to the length of other witnesses' testimony and only spoke about something that was a brief conversation and a little bit about Medicare regulations beside that. I don't believe, frankly, that that was an appropriate decision. I think it was beyond the scope of Judge Kincaid's reasonable deference. And I think that what we had was we had a jury that started to look at just the transcripts. And I think up until then, again, noting the timing of all this, the timing of all this is such that the Allen charge was given and then the jury after this requests Trudy Bell's testimony. They request it at 4.10 p.m. It is then given to them. A verdict came in at 4.45. So in terms of viewing these two issues together, I think that there was a problem with this. The jury had done their job. They had contemplated the evidence. They had gone through it in detail. And they simply got to a point where the judge told them, go back, give me a verdict. They got this transcript. And in my opinion, as a result of that, they split the baby. They found him not guilty on three counts. They found him guilty on one count. And because of that, I think the jury ignored their conscientious beliefs and instead imposed a verdict that they thought they needed to to get the heck out of there. This was Monday of the third week. The judge had informed them it might take up their third week. They'd been there for a long time. They'd been working at it. And I think that it simply wasn't reasonable. And if there's no further questions at this time, I'd actually yield my time. Thank you. Thank you, Your Honor. Time for rebuttal. Mr. Stoltz. Thank you, Your Honor. May it please the Court. I'd like to turn to the Allen charge first. One thing that I want to point out is the language of the first note that Judge Graves, I think you asked some questions about. The first note says there is no unanimous verdict as to Mr. Egobar and then says can we continue deliberating as to Dr. Maguire. There was no indication in the first note that the jury was hopelessly deadlocked or that no further deliberations would be possible, any of that sort of language that you sometimes see. So I think the idea that a mistrial would have been appropriate at that point is just not supported by the record. With respect to the Allen charge also, in the reply brief, there is an argument made that in discussing some of the cases cited in the government's brief that in those cases the Allen charge was given on the first day of deliberations, which in the cases discussed is true. Whereas the argument goes in this case the Allen charge was given essentially during the second full day of deliberations, and that should make some kind of difference. And I think there really is no support for the idea that an Allen charge would be impermissible on the second day of deliberations and would have been on the first day of deliberations. In fact, we cite United States v. Heath, H-E-A-T-H, in our brief. That's an example of a case where an Allen charge was given after seven days of deliberation, and the court found no error in that case. So we have instances of Allen charges being given relatively early on the first day of deliberations. We have instances of Allen charges being given later in deliberations. This case is kind of in the middle. It's essentially the second full day. But nothing in these circumstances, and certainly nothing in the precedent, compels a result that this Allen charge should not have been given or was impermissibly given. Where did the additional language to the Allen pattern charge come from? Was this the judge's doing, or did you suggest it, or how did this addition to the Allen charge come about? The record does not reflect where the language came from. I was not the trial counsel. I'm the counsel on appeal, but I was not the trial lawyer. But the record certainly does not suggest that the government insisted on this language. My understanding from the record is the district judge prepared the Allen charge, said this is the charge I'm going to give, and the language was in there. There was an objection, and he overruled it.  The district court made a number of these changes through the brief to account for the fact that it was a multi-defendant, multi-count trial, and this was an additional example of this trying to sort of craft the charge, which is written in the context of a single defendant, single count trial, and make it make sense and not confuse the jury as to, well, maybe we found that there's one verdict here, and that has to apply across the board. I think that was the issue that the district judge was trying to resolve. Again, in giving these kinds of instructions, the district court has a wide range of discretion. There's certainly no contention that the added sentence was legally erroneous or legally improper. I happen to know that, for example, there's other pattern charges that use similar language of if you find such and such, your verdict should be guilty. I believe that's in the charge for lesser included offenses. Was there any language in any of the instructions that said instead of saying you should convict if there's enough evidence, you should acquit if there's not enough evidence? Well, I believe that was the immediately preceding sentence in the Allen charge. It said if the evidence in this case fails to establish guilt beyond a reasonable doubt as to a count, the accused should have your unanimous verdict of not guilty on that count. And certainly in the normal portion of the charge, there's repeated references to the fact that the government's burden is to prove beyond a reasonable doubt, and if that burden is not met, the verdict should be not guilty. So the charge is— What concerns me, picking up on what your able opponent was arguing, is that that language you just quoted is part of the standard Allen charge, and the idea that this is a balanced charge that's been worked at and being prepared as a model, it previously had ended when the judge added as to a count, but it previously, that sentence that ended that paragraph of the Allen charge, at least as it's broken down in your brief, if the evidence in the case fails to establish guilt, you must acquit. So that was the sense of a proper balance, that explanation. And if that were the proper balance, this new language that was added put it out of balance, the on-the-other-hand language. So I'm concerned about taking something as powerful as an Allen charge that has been carefully worked through and trying to make it fair to both sides and achieve its purpose, whether it's to result in an acquittal or a guilty verdict, but just to get the jury to reach a resolution that the district judge did create an imbalance from what had been accepted as the proper way to put this. Well, we disagree that there was any kind of impermissible imbalance. I mean, I understand the argument, but I think this is a relatively innocuous sentence that simply gives some instructions about a standard burden of proof issue. So there's nothing improper that truly sets the balance of the charge. And I do think, though, the preceding sentence, which is the last sentence of that paragraph within the Allen charge, says, as you just said, basically, that if the evidence fails to establish guilt beyond a reasonable doubt, the accused should have a verdict of not guilty. So in a charge where there's only one count, it makes sense that you wouldn't need anything after that because not guilty resolves the whole case. There's no other charges to consider. The calculus changes, though, when there's multiple counts and multiple defendants. And so I think at that point it was certainly reasonable for the district judge to think, well, I don't want to risk confusing the jury that if they find a not guilty on one count, then they can just ignore the rest of the counts or render some kind of across-the-board verdict. So I think, again, within his sort of broad range of discretion in crafting this sort of charge, inserting this language here was not erroneous. And I want to add that the circumstances of the verdict that was actually delivered, I think, dispel any notion that this was a coerced verdict. We have, you know, the jury continued to deliberate for multiple hours, something like four and a half hours after the Allen charge was read. That's a factor that this court has indicated before indicates, you know, if there's extended deliberation later, it indicates that the jury is truly engaging with the evidence and it's not just a coerced verdict. When they did return the verdict, of course, it was a mixed verdict, and that is a factor in some of the cases we've cited where the court has said the existence of this kind of mixed verdict shows that the jury was, you know, discriminating and truly looked at each count on a count-by-count basis and did not just rush to a verdict. Are you arguing that this addition or change to the pattern charge is okay in all cases or in just specific unique cases like this one? I mean, if we rule in your favor, are we, in essence, then expanding the Allen charge and expanding the pattern charge and telling district courts out there, oh, you've got to change your Allen charge because now the Fifth Circuit said you can add this additional language, or is there something unique to the facts and circumstances as to how it came to the judge that in this particular situation you can add that language? I think it's a case-by-case basis because it depends on how many counts are there, how many defendants are there. I don't think that to affirm this decision simply is to say that this district court did not abuse its discretion in crafting this instruction on the whole. I don't think that means that this instruction is mandated because every case is different. If it's a single defendant, single count case, I think the district court would be wise probably just to follow strictly the Allen charge. There would be no need to make any sort of modifications to it. So I don't think that to affirm here you have to create a sort of rule that goes to every case. But certainly on the facts of this case and the language in this case, I think there's no abuse of discretion, certainly. It was a reasonable thing for the district court to do. And given the totality of all the instructions, the numerous times that the jury was reminded of the burden of proof and these things, there's just no evidence and there's no reason to think that this language was so prejudicial to require a reversal, which is the language that this court has used. Only when the language is so prejudicial to require a reversal will there be a reversal. And I don't think there was a single case cited where an Allen charge was reversed because of some sort of prejudicial language. So I think the district court was sort of within the bounds of what was reasonable and proper here. If there's no further questions about the Allen charge, I would like to talk a little bit about the transcript issue that was discussed. Counsel said a few times that this was a unique fact pattern in that the parties had agreed to give another transcript to the jury before this request for a second witness's transcript was made. I think assuming that it is a unique fact pattern, there's no precedent. The district court's decision here certainly can't be said to be an abuse of discretion. If this is not something that this court has said, no, you cannot do this, you can only give one transcript but not the other. There's no precedent like that. In that circumstance, I think the district judge acted very reasonably and correctly here by saying I'm not going to draw a distinction between this transcript and that transcript after you've already agreed to have this one go back. And I do want to point out two things. One is this issue of Mr. Akile being a Nigerian native and speaking English, I guess, with an accent. That was raised in the motion for new trial that was filed after the trial as an explanation of why counsel at the time thought it was appropriate. There's nothing in the record, though, at the time the transcript was given to the jury, where there's nothing in the record where the party said, well, we'll give this one because he has a Nigerian accent or something like that. So that was not a consideration at the time where the district judge would have been drawing some sort of distinction. It was agreed. They gave it to him. It does seem to me that as broad as discretion of district judges are in making rulings like this, there is a standard that we're supposed to apply. And just saying abuse of discretion is not very nuanced. We are supposed to be assured that there's no undue emphasis upon a particular witness's testimony that's arisen from providing the transcript. At least according to opposing counsel, this was a particularly troubling witness to have in black and white and riding in front of the jurors for them to be examining at some length, though it turns out not at much length as I recall how this played out. What do you say about the importance of Bell's testimony and the kinds of information that would have been in that transcript that could have been unduly emphasized? What's a fair understanding of what her transcript would have contained? Trudy Bell was a Medicare contractor fraud investigator, and she went to this health care agency after their data basically showed that this health care had a spike in billings that looked suspicious. So she went and she had a meeting with Mr. Egobar and Mr. Akeel, and so during her testimony she relayed essentially what happened during this meeting, what kind of information came out during this meeting. It was not a particularly lengthy testimony. I think maybe the key points of the testimony were she had asked Mr. Egobar if the health care agency had a medical director, and he initially said he wasn't sure, and then he said, oh, there's this Dr. Megwa who was the co-defendant. She asked if Dr. Megwa had referred patients to the health care agency, and he said, Mr. Egobar said, I'm not sure. I don't think there's been an argument why anything, any particular fact or statement in Ms. Bell's testimony would have somehow improperly been emphasized. There's been nothing identified in that testimony other than just the fact that the testimony was given. There's no argument that this particular statement was particularly damning against my client or something like that. It seems that it's just the fact that the testimony was given. And if it's simply the fact that the testimony was given, then I think there's nothing you can point to that says, well, this right here was something that was unduly emphasized because there's been no argument about that. And I do want to point out that the district court gave instructions elsewhere to the jury, and these are instructions that were not only given in court but also were given to the jury on paper form and to take back into the deliberation room. Other instructions that said make sure to look at every witness, consider all the evidence, these sort of instructions that are sort of proactively telling the jury don't unduly emphasize one quantum of evidence over the other. So given the existence of these other instructions, given the party's prior agreement, unopposed agreement to send back another transcript, I don't think you can say that there was some sort of reversible error here, especially given that there's been nothing in the testimony itself that's been identified as something that they think was unduly emphasized. So I think the district court was on solid ground here basically treating the two transcript requests as the same and giving both. Can you see a set of circumstances where a court might allow one transcript and not another? I mean, is it at risk that the court is playing, selecting what testimony should go back and which should not? Or once you've sent one in, you're sort of obligated and presumed that all of them come in? Or is there something unique about each witness's testimony that you can say this transcript goes back but this other one does not? I mean, I think it all is very case-specific and the district court is in the best position to be able to assess things like how long is this going to take? Is it something that's going to unduly delay deliberations? If you look at the cases, these are the sort of on-the-ground practical things that the courts recognize that the district court is in the best position to account for. You know, there's cases out of the Ninth Circuit, I believe, that are cited in Mr. Agubar's brief where the jury gave notes that were very specific saying we want to look at only like one line of testimony where a witness made a crucial identification. And in those cases, I think the Ninth Circuit said, well, given that the jury specifically wanted to only look at this one line about the identification of the defendant, we need to make sure they look at all that witness's testimony, including the cross-examination. So it's very much a case-by-case basis depending on the circumstances, I think. If there's no more questions on the transcript, I do want to make one point about the sufficiency of the evidence and apologize for something I caught in the brief. We have a citation error in footnote 4 and on page 44. We cite to a number of these medical records that were introduced at trial that were medical records of two women who testified at trial, and they essentially testified that they did not have any of the conditions that were reflected in these medical records, including records that Mr. Agubar prepared, and they were certainly not homebound at the time that they were being billed out as homebound. One of those medical records that we cited is a December 20, 2008, form. It actually relates to this other Mary Smith, Mary A. Smith. And the jury was instructed to disregard the records relating to Mary A. Smith. The correct Mary Smith is Mary I. Smith, and we've cited numerous other records that are of the Mary I. Smith, who is the woman who testified at trial. And those are, again, as we've said in the brief, among the various evidence that shows that Mr. Agubar was involved in this scheme and that suffice to support the jury's verdict. If there's no other questions, we would ask that the judgment as to Mr. Agubar be affirmed, and I'll sit down. Thank you. Thank you. Mr. Lund? Thank you, Your Honor. Just to respond briefly, opposing counsel refers to what he calls a, quote, relatively innocuous sentence with regard to the Allen charge and language being added. I would remind the court that the Allen charge itself is called the dynamite charge. The very nature of it being given means it's not innocuous. The language in there is specifically heard by a jury after they have already considered the instructions that were given to the court, after they have already deliberated, after they have already come to a place where they can't reach an antispecition. And then in that moment of wanting clarity because they don't know the law and they don't know what to do, then the Allen charge comes in. No language in that charge can truly be innocuous based on the nature of the charge itself. Now, again, I do agree that the way the specific words in the sentence are phrased, it's not suggesting that they have to go find him guilty, but that is not the point. The point, as the bench made previously in a question, is simply that once you already have it carefully crafted from the Fifth Circuit pattern charge, you cannot then try to tilt the scale a little bit by putting your finger on one side or the other to try and suggest one way or another because the jury is not lawyers. The jury is not people that study the law and have gone through all this and understand this. They are relying on the words they hear and the copy of the Allen charge that they're given. And it was unbalanced, improperly, and that is the argument. Now, with regard to Counselor saying that the accent issue of Ferguson Aquilae was not brought up in the moment, he's correct that on the record it was not brought up in the moment, and I'm not going to get into what was argued off the record. That's not proper. But I will say that the district court certainly heard Ferguson Aquilae testify. The government certainly heard Ferguson Aquilae testify. I heard Ferguson Aquilae testify. I don't . . . . . . to be given undue emphasis, which is why I think a judge ought to be very reluctant to allow that any transcript of witness testimony go back to the jury. But in this case, the parties agreed that it could. And so once that happens, and then there's another request for more transcripts of testimony, couldn't it be viewed as a comment by the court on the worth, the weight, the value of a witness' testimony? If you have a situation where they ask for one transcript and then they get it, and then now they ask for a second transcript and the court says, well, you can't have that one. Don't you run that risk? If the judge now starts to decide, well, you can't have this one, oh, well, how about this one? Well, yeah, you can have that one. You don't think that's problematic? Respectfully, Your Honor, no, I don't, because the district court is certainly capable of sending back an explanation as to why the district court decided not to give that transcript. It could simply be a reminder that they are to rely on what they observed in the testimony. They can reference the notes, and they must deliberate amongst themselves. Why couldn't that reminder have come when they asked for the first transcript? Everything you just said would have been appropriate when they asked for the first transcript. Well, Your Honor, I think, again, based on this particular witness, what he testified to, his accent, I think that is the reason why it was done. I can't speak to what the district court thought, but certainly if the district court had the concern Your Honor just espoused, he would have overruled us. Both sides agreed to go back. In fact, that does not bind the district court to give the transcript to the jury. And if this judge had this concern with this witness, I believe he would have told myself and the government, too bad I'm not doing it. And so I think that while I understand your point, I'm not sure it's an issue in this case for that reason based on what the judge saw. Now, I don't think the government is trying to insinuate that I'm being disingenuous in bringing up the accent thing. But again, I did mention it in the motion for new trial only because I didn't think I needed to point out to the district judge who heard the entire testimony that there was an accent. I think that frankly was kind of obvious from listening to him. And with regards to the timing issue, again, I think that you can look at error points one and two in aggregate almost because of the quick succession of events which happened between the Allen charge, the giving of the testimony, and the final rendering of a verdict. And I think when you consider together the specifics of what happened, there was an abuse of discretion by the trial court in not saying to the jury, okay, mistrial. This is too much. At that point, justice was not served. The conviction should be affirmed. I would ask that you do so. Thank you, Your Honors. Thank you. Thank you, Mr. Lund. You're court appointed. The court appreciates the work of the Criminal Justice Act lawyers who take on appointments and appreciate it. Thank you very much. I appreciate it. Thank you.